IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WEST FRANKLIN PRESERVATION LIMITED PARTNERSHIP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| NURTUR NORTH CAROLINA, LLC, d/b/a Aveda Institute of Carolinas-Chapel Hill; NURTUR HOLDINGS, LLC; PATRICK J. THOMPSON; and MOLLY M. THOMPSON, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |
| | )     1:14cv266 |
| NURTUR NORTH CAROLINA, LLC d/b/a Aveda Institute of Carolinas-Chapel Hill, | ) ) ) ) |
| Counter-claim and Third-Party Plaintiff, | ) ) ) |
| v. | ) ) |
| WEST FRANKLIN PRESERVATION LIMITED PARTNERSHIP, and ANTOINE PUECH, | ) ) ) ) |
| Counter-Claim and Third-Party Defendants. | ) ) ) |

**MEMORANDUM ORDER**

THOMAS D. SCHROEDER, District Judge.

This civil action arising from alleged breaches of leases and associated agreements was tried before a jury beginning on October 13, 2015. On October 20, 2015, the jury returned a verdict in favor of the landlord, West Franklin Preservation Limited

Partnership ("West Franklin"), on all of its claims against tenants Nurtur Holdings, LLC ("Nurtur Holdings") and Nurtur North Carolina, LLC, d/b/a Aveda Institute of the Carolinas – Chapel Hill ("Nurtur NC"), and guarantors Patrick J. Thompson, and Molly M. Thompson (collectively, "Defendants"); the jury further rejected all of Nurtur NC's counterclaims alleging, among other things, fraud against West Franklin and third-party Defendant, Antoine Puech, West Franklin's real estate broker. (Doc. 108.) The court entered judgment in favor of West Franklin in the total amount of $810,382.02 in accordance with the jury's verdict. (Doc. 109.)

All parties filed timely post-trial motions. Defendants move for a new trial. (Doc. 111.) West Franklin and Puech move to recover costs, pre- and post-judgment interest, and attorneys' fees. (Doc. 113.) The motions have been fully briefed and are now ripe for consideration. For the reasons set forth below, Defendants' motion for a new trial will be denied. West Franklin and Puech's motion for costs, interest, and attorneys' fees will be granted in part and denied in part, as outlined below.

## I. MOTION FOR NEW TRIAL

Defendants move for a new trial pursuant to Federal Rule of Civil Procedure 59. (Doc. 111.) A district court must set aside a verdict and order a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which

2

is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." <u>Knussman v. Maryland</u>, 272 F.3d 625, 639 (4th Cir. 2001) (citations omitted). The decision to grant a new trial lies in the sound discretion of the district court. <u>See</u> <u>id.</u>

### A. Fraud and Frustration of Purpose Defenses

Defendants first argue that the jury's verdict regarding their fraud and frustration of purpose defenses to the leases was against the manifest weight of the evidence. This contention relates to Defendants' claims that in marketing the property to Defendants, Puech represented that a nearby parking lot, Lot 5, would be available for customer and employee use for the duration of the lease and that a subsequent construction project approved by the Town of Chapel Hill on Lot 5 during the lease frustrated Defendants' use of the property. This contention is meritless.

With regard to fraud, Puech testified on the third day of trial that he did not make the representation attributed to him: namely, that the parking spaces in Lot 5 could not be taken away. The jury could reasonably credit this testimony. More importantly, in reaching its verdict, the jury could have reasonably concluded that Defendants could not have reasonably relied on such a statement, had it been made, in the context of an arms-length negotiation where Lot 5 was owned by a third party – the Town of Chapel Hill. Similarly, with regard to frustration of purpose,

3

the jury could have reasonably concluded that the construction on Lot 5 did not destroy the value of the leases to Defendants based on credible evidence that Defendants still operated their business and made substantial, albeit diminished, profits during the period of construction. Moreover, as a factual matter, there was substantial evidence that the decline in Defendants' business coincided with the 2008 downturn in the economy as well as a cash crunch while Defendants' school segment of their business was experiencing re-accreditation uncertainty. The jury could have reasonably attributed any reduction in revenues to these factors. In addition, in light of the extensive provisions in the leases concerning parking, the jury could have concluded that the risk of loss of parking availability was reasonably foreseeable and that the leases allocated this risk to Defendants.

In sum, substantial evidence supported the jury's verdicts with regard to Defendants' fraud and frustration of purpose defenses.

**B.  Improper Jury Argument**

Defendants next contend that opposing counsel made an improper argument to the jury. This contention is similarly lacking in merit.

Statements in closing arguments must be supported by the evidence in the record. See Waldron v. Waldron, 156 U.S. 361, 380 (1895). A district court has broad discretion in controlling

4

closing arguments.  United States v. Baptiste, 596 F.3d 214, 226

(4th Cir. 2010).   In addition, improper remarks in closing

arguments do not provide grounds for a new trial unless the error

is "inconsistent with substantial justice."  See Bennett v. R&L

Carriers Shared Servs., LLC, 744 F. Supp. 2d 494, 542 (E.D. Va.

2010) (citing Fed. R. Civ. P. 61).  This is particularly true when

a party fails to object to the allegedly improper argument at

trial.  "A motion for a new trial should not be granted, therefore,

where the moving party has failed to timely object to the alleged

impropriety giving rise to the motion."  Dennis v. Gen. Elec.

Corp., 762 F.2d 365, 367 (4th Cir. 1985).  "The failure to object

at the proper time" will only be overlooked when "exceptional

circumstances exist such as when the error is so obvious or so

serious that the public reputation and integrity of the judicial

proceeding is impaired."  Id.  Defendants have demonstrated no

such circumstances in this case.

      At trial, there was no dispute that Defendants failed to make

numerous payments to West Franklin, as required by the leases and

associated agreements.   In colloquy with the court, counsel for

Defendants acknowledged this nonpayment.   On October 16, 2015,

Defendants' counsel noted, "We would concede that there is a breach

for payment -- nonpayment under the lease and under the promissory

note."  Immediately thereafter, counsel represented to the court

that he would not argue that Defendants did not breach the leases

and associated agreements, noting, "I think it is clear from the evidence that [there] are a number of missed lease payments over a period of time."[1]

Despite the foregoing, during closing arguments counsel for Defendants asked the jury to find that Defendants did not breach the contracts. Defense counsel further argued that, even if the jury were to find a breach of the contracts, the jury should award no damages as a result of this breach. In response, opposing counsel opened his rebuttal closing argument by stating, "I have just witnessed an attempt to nullify the provisions of a contract signed between two businesses." Defendants did not object to this statement at trial, and contrary to Defendants' current argument,

---

[1] Under North Carolina law, a residential tenant's duty to pay rent is dependent upon the landlord's obligation to keep the premises in fit condition. Gardner v. Ebenezer, LLC, 190 N.C. App. 432, 435-36, 660 S.E.2d 172, 174 (2008). By contrast, a commercial tenant's duty to pay rent is not necessarily excused by the landlord's failure to maintain the premises. Id. at 436, 660 S.E.2d at 174-75. As a result, a commercial tenant has three options when a landlord fails to provide fit premises: (1) sue the landlord for the decline in rental value of the property, (2) perform the repairs itself and sue to recover the reasonable cost of such repairs, or (3) move out and claim constructive eviction. Id. at 436, 660 S.E.2d at 175. Here, Defendants demanded "an equitable setoff for any amounts to which they are determined to be entitled as damages in this action against any amounts [West Franklin] recover herein." (Doc. 37 at 13.) Defendants pleaded this demand as a defense to West Franklin's breach of contract claim, but such a defense is not available to commercial tenants under North Carolina law. Gardner, 190 N.C. App. at 436, 660 S.E.2d at 174-75. During the court's review of the proposed verdict form with counsel on October 16 and later during colloquy at the bench during closing arguments on October 19, Defendants agreed that the jury should find them liable for the full amount of nonpayment if the jury concluded the leases and related agreements were valid and that the court could later reduce this amount by any damages the jury might find as a result of West Franklin's alleged breaches of contract.

this statement was not an "improper and personal assault on Defendants calculated to degrade Defendants in the eyes of the jury." (Doc. 112 at 15.) Instead, this was an accurate characterization of Defendants' own improper argument; given the admission of nonpayment and contrary to counsel's prior acknowledgment to the court, counsel's argument was indeed an invitation for the jury to nullify the contracts and, potentially, provide a double recovery to Defendants.[2]

Accordingly, the statement cited by Defendants was not improper and in any event did not pose any threat to the integrity of the trial.

### C. Verdict Form

Finally, Defendants raise two contentions about the verdict form. "[T]he formulation of issues and the form of interrogatories is committed to the sound discretion of the trial judge." <u>Klein v. Sears Roebuck & Co.</u>, 773 F.2d 1421, 1426–27 (4th Cir. 1985). When evaluating the adequacy of a verdict form, the court should "consider several factors, including whether the interrogatories adequately presented the contested issues to the jury when read as a whole and in conjunction with the general charge, whether submission of the issues to the jury was fair, and whether the

---

[2] As was plain, the verdict form contained separate questions in which the jury could award Defendants damages if it found either that Defendants had valid defenses to their breach or that West Franklin had also breached the contracts. (<u>See</u> Doc. 108.)

ultimate questions of fact were clearly submitted to the jury."
Id. at 1427. A trial court does not abuse its discretion when,
"viewed in the context of controlling North Carolina law, the
verdict form and charge to the jury adequately informed the jury
of the issues before it." Horne v. Owens-Corning Fiberglas Corp.,
4 F.3d 276, 284 (4th Cir. 1993). Similarly, under North Carolina
law, the issues on a verdict form "should be formulated so as to
present separately the determinative issues of fact arising on the
pleadings and evidence." Stacy v. Jedco Constr., Inc., 119 N.C.
App. 115, 122, 457 S.E.2d 875, 880 (1995). The court should not
"embody in one issue two propositions as to which the jury might
give different responses." Id. The trial court does not abuse
its discretion, however, so long as the verdict form "submits the
issues comprehensively to resolve all factual controversies." See
Wilson v. Pearce, 105 N.C. App. 107, 112, 412 S.E.2d 148, 150
(1992).

Defendants first contend that, because they raised fraud as
both a defense to West Franklin's breach of contract claims and as
a counterclaim (Doc. 37 at 13–14, 36–40), the verdict form should
have contained identical sets of questions pertaining to fraud as
both a defense and again as an affirmative defense. At trial, the
court proposed to counsel a verdict form that contained one set of

8

questions pertaining to fraud,[3] with the understanding that Defendants could make a post-trial election between any remedies the jury might award. Defendants did not object and on October 16, 2015, represented that they agreed with this approach "completely," though they asked that the fraud questions be included alongside their other affirmative defenses rather than in a later section of the verdict form devoted primarily to Nurtur NC's counterclaims.

Now, Defendants contend that the verdict form should have contained two separate sets of questions pertaining to fraud, arguing that the jury was confused as to whether fraud could be used as a defense to West Franklin's claims. This argument lacks merit. As Defendants acknowledged at trial, the elements and burden of proof associated with fraud are the same regardless of whether the claim is framed as an affirmative defense to a breach of contract or as a counterclaim for damages. See Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). As a result, there was no need to subject the jury to two identical sets of instructions and questions; indeed, fashioning them as the court did avoided the potential for inconsistent verdicts. The

---

[3] The verdict form contained four fraud-related questions. Question 15 asked whether West Franklin and Puech committed fraud, question 16 asked whether Defendants were entitled to rescind various contracts as a result of any fraud, question 17 involved a related statute of limitations defense, and question 18 quantified the damages suffered as a result of any fraud. (See Doc. 108 at 4–5.)

9

jury was not confused by this aspect of the verdict form.

Finally, Nurtur NC argues that the verdict form should have contained separate questions relating to its claims for fraud and unfair and deceptive trade practices ("UDTPA") under N.C. Gen. Stat. § 75-1.1. Nurtur NC pleaded its UDTPA claim in terms of fraud (see Doc. 37 at 14 ("This case arises from the fraudulent conduct of a landlord"); id. at 40), and treated the UDTPA and fraud claims interchangeably in their briefings to the court, evidence at trial, proposed jury instructions, and arguments to the jury. Nurtur NC also expressed approval of the court's proposed verdict form and jury instructions. In fact, Nurtur NC itself twice proposed jury instructions that called for treating the fraud and UDTPA claims as a single issue for the jury to decide. (See Doc. 85 at 23; Doc. 100 at 50-54.) Under the "invited error" doctrine, Nurtur NC cannot now be heard to complain. See, e.g., Project Controls Servs., Inc. v. Westinghouse Savannah River Co., 35 F. App'x 359, 365-66 (4th Cir. 2002) (unpublished) (citing United States v. Jackson, 124 F.3d 607, 617 (4th Cir. 1997) (finding that the plaintiff who requested the challenged jury instructions "having made its bed, must now lie in it").[4]

Contrary to Nurtur NC's arguments, however, there was nothing

---

[4] Unpublished decisions of the Fourth Circuit are not normally accorded precedential value but are "entitled only to the weight they generate by the persuasiveness of their reasoning." Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (quoting Hupman v. Cook, 640 F.2d 497, 501 & n.7 (4th Cir. 1981)).

improper about omitting separate UDTPA questions from the verdict form in this case.  A fraud claim has five elements: (1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive; and (5) results in damage to the injured party.  Ragsdale, 286 N.C. at 138, 209 S.E.2d at 500.  In order to satisfy the fourth element, the injured party's reliance on the misrepresentation or concealment must be reasonable.  State Props., LLC v. Ray, 155 N.C. App. 65, 72, 574 S.E.2d 180, 186 (2002) (citations omitted).  Similarly, in order to establish a UDTPA claim, a plaintiff must prove (1) an unfair or deceptive act; (2) in or affecting commerce; that (3) proximately caused injury to the plaintiff.  Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013).  When the UDTPA claim is based on an alleged misrepresentation, the proximate cause element requires both actual and reasonable reliance.  Id. at 89–90, 747 S.E.2d at 227.

Here, the contested elements of Nurtur NC's UDTPA claim[5] were entirely duplicative of its fraud claim, at least under the theory Nurtur NC maintained throughout this action.  The only unfair or deceptive conduct alleged by Nurtur NC was Puech's supposed

---

[5] West Franklin and Puech stipulated that the alleged conduct occurred in commerce.

misrepresentation or concealment regarding Lot 5, the same conduct that formed the predicate for its fraud claim. Thus, if the jury concluded that Puech did not conceal or make a false statement regarding a material fact, then the court could not conclude that he engaged in unfair or deceptive conduct. If the jury concluded that Nurtur NC either did not rely on Puech's conduct or that its reliance was unreasonable, then Nurtur NC's UDTPA claim would fail for lack of proximate cause. See Bumpers, 367 N.C. at 89–90, 747 S.E.2d at 227. Finally, if the jury concluded that Nurtur NC suffered no damages as a result of fraud, then its UDTPA claim would likewise fail.[6]

In sum, there was no need to include separate UDTPA questions because the jury's fraud finding was sufficient to resolve all of the factual controversies pertinent to Nurtur NC's UDTPA claim. See Horne, 4 F.3d at 284; Wilson, 105 N.C. App. at 112, 412 S.E.2d

---

[6] It is possible that a jury could find a UDTPA violation where one made (or failed to make) a material statement that is unfair or deceptive but is not fraud because it occurred without knowledge of falsity or intent to deceive. But in this case the jury could not have reasonably reached such a conclusion based on the evidence presented. As Defendants themselves argue in their motion for a new trial, there was "overwhelming" evidence that Puech knew that construction on Lot 5 was a possibility at the time of the alleged misrepresentation. (See Doc. 112 at 3–9.) No party seriously disputed this fact at trial. In fact, Puech himself testified that, in light of his knowledge at the time, it would have been "totally irresponsible and false" for him to tell Mr. Thompson that the parking spaces in Lot 5 could never be taken away. Moreover, such a determination would have required the submission of a separate factual interrogatory to the jury or separate jury instruction, which Defendants never proposed. In any event, Defendants waived this argument by failing to specifically raise it, both at trial and in their briefing on the present motion for a new trial.

at 150.[7]  The absence of separate UDTPA questions was not error in this case and, in any event, does not merit a new trial.

## II.  MOTION FOR COSTS, INTEREST, AND FEES

West Franklin and Puech move for an award of costs, pre-judgment interest, post-judgment interest, and attorneys' fees. (Doc. 113.)  Defendants concede that they are liable for $11,196.60 in costs, $92,981.85 in attorneys' fees related to West Franklin's breach of contract claims, $2,367.30 in pre-judgment interest that accrued during the ten days of trial,[8] and that any post-judgment interest should be calculated in accordance with the federal rate as specified in 28 U.S.C. § 1961(a)-(b).  (See Doc. 113 at 3; Doc. 121 at 2; Doc. 126 at 2-3.)  The parties disagree, however, as to whether West Franklin and Puech are entitled to recover attorneys' fees related to the cost of defending Nurtur NC's counterclaim under the UDTPA.

Under North Carolina law, a party defending a UDTPA claim may recover reasonable attorneys' fees if the "party instituting the

---

[7] Of course, had the jury found for Nurtur NC on its fraud claim, the court would then be compelled to find a UDTPA violation as a matter of law.  See Hardy v. Toler, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975).

[8] Although all parties agreed to the total amount of pre-judgment interest and attorneys' fees to be awarded in connection with West Franklin's breach of contract claims, only West Franklin addressed the manner in which liability for those sums should be apportioned among the Defendants.  (See Doc. 113 at 7; Doc. 121 at 2; Doc. 126 at 2-3.)  As a result, the court treats these issues as uncontested pursuant to Local Rule 7.3(k).  In any event, West Franklin's proposed apportionment is consistent with the contractual provisions and the damages as found by the jury at trial.

13

action knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1(2). "A claim is frivolous if a proponent can present no rational argument based upon the evidence or law in support it. A claim is malicious if it is wrongful and done intentionally without just cause or excuse or as a result of ill will." Blyth v. McCrary, 184 N.C. App. 654, 663 n.5, 646 S.E.2d 813, 819 n.5 (2007) (citations, quotation marks, and alterations omitted). The mere fact that a claim was ultimately found to be "legally insufficient" does not "necessarily mean that it was also frivolous and malicious." Basnight v. Diamond Developers, Inc., 178 F. Supp. 2d 589, 593 (M.D.N.C. 2001). Ultimately, the propriety of awarding attorneys' fees under § 75-16.1 "is within the sound discretion of the trial judge." Custom Molders, Inc. v. Am. Yard Prods., Inc., 342 N.C. 133, 141, 463 S.E.2d 199, 204 (1995).

Here, Nurtur NC's UDTPA claim was not frivolous. Defendants produced evidence sufficient to raise a genuine issue of material fact on each contested element of a UDTPA claim. At trial, Mr. Thompson testified that Puech told him that Lot 5 was a publicly-dedicated lot and that the spaces could not be taken away. Although Puech denied having made this statement, he acknowledged that such a statement would have been false. Defendants also produced some evidence to suggest that Puech knew that construction on Lot 5 was a reasonable possibility at the time of the alleged

14

statement. Finally, Defendants produced substantial evidence showing that Nurtur NC made no further investigation into the parking situation after hearing the alleged statement, and there was no dispute that Nurtur NC's business suffered some diminution in revenues after construction began on Lot 5.

At its core, Nurtur NC's UDTPA claim involved few issues of contested fact. Instead, the issue mostly boiled down to the reasonableness of relying on vague representations in an arms-length transaction, and Nurtur NC presented a non-frivolous (though ultimately unsuccessful) argument that its reliance on Puech's statements (or silence) was reasonable. As a result, Nurtur NC's UDTPA claim survived motions for both summary judgment and directed verdict. Although this fact is not dispositive in and of itself, see, e.g., Castle McCulloch, Inc. v. Freedman, 169 N.C. App. 497, 504, 610 S.E.2d 416, 422 (2005) (upholding an award of fees even though the trial court had previously denied a motion for summary judgment), it weighs against an award of fees on this claim.

Nurtur NC's UDTPA claim was also not malicious. West Franklin and Puech argue that "there were circumstances to suggest that Nurtur [NC] brought [its UDTPA claim] as a defensive tactic." (Doc. 115 at 11.) They claim that Nurtur NC filed its UDTPA claim shortly before mediation solely to use the claim as leverage during settlement negotiations. (See id. at 7–11.) True, an award of

15

fees may be appropriate when a defendant brings a "totally meritless" UDTPA counterclaim solely as a "defensive tactic." See Furniture Distribs., Inc. v. Software Support-PMW, Inc., No. 3:12-CV-90-GCM, 2014 WL 421913, at *2 (W.D.N.C. Feb. 4, 2014). Unlike the defendant in Furniture Distributors, however, Nurtur NC produced evidence to support each element of its UDTPA claim, and the timing of the claim is explained by evidence that Nurtur NC gained during discovery. As the United States Magistrate Judge observed in her Recommendation regarding West Franklin and Puech's statute of limitations defense, the critical issue is when Nurtur NC learned that Puech was aware of the possibility of construction at the time he made the allegedly misleading statement, and there is "no evidence to warrant a finding that this occurred prior to Mr. Puech's 2014 deposition." (Doc. 90 at 30.) As a result, the court is not persuaded that Nurtur NC brought its UDTPA claim in bad faith simply as a defensive tactic.

Ultimately, each party produced sufficient evidence to support a verdict in its favor on Nurtur NC's UDTPA claim. The jury's decision to credit West Franklin and Puech's evidence does not render Nurtur NC's claim frivolous or malicious. Nor can the court say that Nurtur NC brought the claim in bad faith or simply as a litigation tactic. Accordingly, West Franklin and Puech's motion for attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1(2) will be denied.

16

### III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion for a new trial pursuant to Federal Rule of Civil Procedure 59 (Doc. 111) is DENIED.

IT IS FURTHER ORDERED that West Franklin and Puech's motion for costs, interest, and fees (Doc. 113) is DENIED as to the request for attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1(2) and is otherwise GRANTED as follows:

1.  West Franklin Preservation Limited Partnership shall recover Eleven Thousand One Hundred Ninety-Six and 60/100 Dollars ($11,196.60) in costs (Doc. 116) from Nurtur Holdings, LLC; Nurtur North Carolina, LLC, d/b/a Aveda Institute of the Carolinas – Chapel Hill; Patrick J. Thompson; and Molly M. Thompson, each of whom is jointly and severally liable.

2.  West Franklin Preservation Limited Partnership shall also recover an additional Two Thousand Three Hundred Sixty-Seven and 30/100 Dollars ($2,367.30) in prejudgment interest accrued during the ten days of trial from Defendants apportioned as follows: Nurtur Holdings, LLC; Nurtur North Carolina, LLC, d/b/a Aveda Institute of the Carolinas – Chapel Hill; Patrick J. Thompson; and Molly M. Thompson are jointly and

17

severally liable for One Thousand Two Hundred Eighty-Six and 90/100 Dollars ($1,286.90); and Nurtur North Carolina, LLC, d/b/a Aveda Institute of the Carolinas – Chapel Hill; Patrick J. Thompson; and Molly M. Thompson are also jointly and severally liable for an additional One Thousand Eighty and 40/100 Dollars ($1,080.40).

3. West Franklin Preservation Limited Partnership shall also recover an additional Ninety-Two Thousand Nine Hundred Eighty-One and 85/100 Dollars ($92,981.85) in attorneys' fees from Defendants pursuant to N.C. Gen. Stat. § 6-21.2 apportioned as follows: Nurtur Holdings, LLC; Nurtur North Carolina, LLC, d/b/a Aveda Institute of the Carolinas – Chapel Hill; Patrick J. Thompson; and Molly M. Thompson are jointly and severally liable for Forty-Seven Thousand Eight Hundred Twenty-Three and 95/100 Dollars ($47,823.95); and Nurtur North Carolina, LLC, d/b/a Aveda Institute of the Carolinas – Chapel Hill; Patrick J. Thompson; and Molly M. Thompson are also jointly and severally liable for an additional Forty-Five Thousand One Hundred Fifty Seven and 90/100 Dollars ($45,157.90).

4. Post-judgment interest shall be awarded at the federal rate as specified in 28 U.S.C. § 1961(a) and (b).

/s/   Thomas D. Schroeder
                                 United States District Judge
May 27, 2016